**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KELLY GIMINIANI,**

                              **Plaintiff,**

        **v.**                                                    **1:99-CV-2161**
                                                                     **(GLS-RFT)**

**CITY OF ALBANY; CITY OF ALBANY POLICE**
**DEPARTMENT; KEVIN M. TUFFY, Individually**
**and as Chief of the Albany Police Dept.;**
**WILLIAM BOWEN, Individually and as**
**Communications Unit Commander of the**
**Albany Police Dept.; PAULA BREEN, Individually**
**and as Office of Professional Standards Unit**
**Commander of the Albany Police Dept.; and**
**MARK SEYMOUR, Individually and as**
**Communications Unit Supervisor of the Albany**
**Police Dept.,**

                              **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Hite, O'Donnell Law Firm           BRIAN J. O'DONNELL, ESQ.
26 Century Hill Drive, Ste. 204
Latham, NY 12110

**FOR THE DEFENDANTS:**

Brennan, Rehfuss Law Firm          STEPHEN J. REHFUSS, ESQ.
19 Dove Street, Ste. 202
Albany, NY 12210

Ainsworth, Sullivan Law Firm          MARGARET C. LYNCH, ESQ.
P.O. Box 12849
403 New Karner Road
Albany, NY 12212

**Gary L. Sharpe**
**U.S. District Judge**

## SUPPLEMENTAL DECISION AND ORDER

### I. Introduction

On December 14, 2004, this court issued an oral decision and order

partially resolving the motions for summary judgment filed by the

defendants City of Albany, City of Albany Police Department, Kevin Tuffy,

William Bowen and Paula Breen (collectively the "City defendants"), and by

defendant Mark Seymour.  *Dkt. No. 63; Hearing Transcript (Hg. Tr.), Dkt.*

*No. 68.*  The court reserved decision on plaintiff Kelly Giminiani's claims for

(1) hostile work environment and (2) retaliatory discharge under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), and New

York's Human Rights Law, N.Y. Executive Law § 296 *et seq.* (HRL).  It

ordered the parties to submit supplemental factual statements on specific

instances of conduct with respect to hostile work environment that allegedly

occurred after the termination of a consensual relationship between

Giminiani and Seymour.  *Hg. Tr. at 38-39, 54-55.*

For the reasons that follow, the remainder of the City defendants' motion is denied, and Seymour's motion is denied in part and granted in part.

## II. Discussion

Giminiani alleges violations of Title VII and HRL § 296 on the basis of hostile work environment and retaliatory discharge.[1]  The court's substantive consideration of Giminiani's § 296 claims "parallels the analysis used in Title VII claims."  *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122  n.2 (2d Cir. 2003) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000)).[2]  For purposes of this Supplemental Decision and Order, familiarity is assumed with the procedural history, relevant factual background, and summary judgment standard recited in the court's December 14 decision, *Dkt. No. 68*, and the latter is incorporated herein.

_____

[1]Her Title VII claims are only against the City and Police Department, while her § 296 claims are additionally asserted against the individual defendants.  *Accord Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) ("individuals are not subject to liability under Title VII") and citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

[2]Given the near identity of the applicable legal framework and requisite evidentiary quantum pertinent to both Title VII and HRL § 296 claims, Seymour's argument that the court should decline to exercise supplemental jurisdiction over Giminiani's state-law claims has no merit and is hereby rejected.

**A.    Hostile Work Environment**

Title VII prohibits discrimination "against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex,"  42 U .S.C. § 2000e-2(a)(1), and it is well settled that the "prohibition of sex discrimination extends to sexual harassment."  *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-68 (1986)).  Title VII prohibits not only "tangible" or "economic" discrimination, but also discrimination which makes a work environment hostile or abusive.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see Vinson*, 477 U.S. at 64.  Thus, "Title VII is violated '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Mack*, 326 F.3d at 122 (quoting *Harris,* 510 U.S. at 21).  "To survive a motion for summary judgment [on a claim of sex-based hostile work environment], a plaintiff ... must [establish two elements:] (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing

4

the conduct that created the hostile environment to the employer." *Id.*

(quoting *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 436

(2d Cir. 1999)) (internal quotation marks omitted).  "The first relates

principally to the environment itself and its effect on the plaintiff; the second

relates to the employer's response to a complaint about the environment."

*Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

### 1. *Giminiani's Work Environment*

The City defendants and Seymour first contend that Giminiani has

failed to make a *prima facie* showing of hostile work environment.  They

argue that Giminiani has not shown that Seymour's conduct was severe or

pervasive enough to create an objectively hostile environment, that she

subjectively perceived it as such, or that it affected the terms of her

employment.  However, these issues cannot be determined at this stage,

either because of disputed material facts, or because the record presented

to the court is insufficient.

"[I]n order to be actionable under the statute, a sexually objectionable

environment must be both objectively and subjectively offensive, one that a

reasonable person would find hostile or abusive, and one that the victim did

in fact perceive to be so."  *Faragher v. City of Boca Raton*, 524 U.S. 775,

5

787 (1998); *see Petrosino*, 385 F.3d at 221 (citing *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)); *see also Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citing *Harris*, 510 U.S. at 21).  To determine whether the environment is sufficiently hostile or abusive, a court must "'look[] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Faragher*, 524 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 23); *see Alfano*, 294 F.3d at 377.  "There is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim."  *Richardson*, 180 F.3d at 439 (internal quotation marks and citation omitted).  As a general rule, incidents must be more than episodic; "they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Alfano*, 294 F.3d at 374 (internal quotation marks, citation omitted).  "[S]imple teasing, offhand comments, and isolated incidents ... will not amount to discriminatory changes in the terms and conditions of employment" sufficient to meet the threshold of severity or pervasiveness.  *Faragher*, 524 U.S. at 788 (citation

6

and internal quotation marks omitted); *Alfano*, 294 F.3d at 374 (citation omitted).  "But it is [also] well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace."  *Alfano*, 294 F.3d at 274 (citing *Howley*, 217 F.3d at 154; *Richardson*, 180 F.3d at 437).  Therefore, to summarize, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (internal quotations, citation omitted).  Courts must be mindful that Title VII is not "a general civility code."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). It is also "axiomatic" that to establish a sex-based hostile work environment, a plaintiff must demonstrate that the conduct occurred because of her sex.  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

The gravamen of Giminiani's hostile work environment claim is her contention that following the termination of their affair, Seymour engaged in conduct that affected her work environment.  First, she claims that she

7

ended the affair around Memorial Day weekend of 1998,[3] and that during June, Seymour made it a practice of walking behind her and touching her posterior.  Seymour disputes that he ever touched her after their affair ended.  While Giminiani claims that she put an end to the relationship as mentioned above,[4] Seymour claims that he did not find out until mid-June or early July.  Seymour also points to, *inter alia*, Giminiani's "fuzzy" memory of the events, her telling him that she was thinking about reconciling with her husband anywhere between the end of May or middle of June, and his not finding out that Giminiani had terminated the affair until late June or early July from a third party.

In addition, Giminiani claims that after the affair, Seymour, on numerous occasions, told her that it would be a bad career move to go back with her husband, warned her not to "piss [him] off," and "not tell anybody there was anything between [them]" because he would get "really angry and who knows what will happen."  The defendants, naturally, deny these assertions, and present those comments in a different light.  Specifically, Seymour claims that he responded to Giminiani's stated

---

[3]The court takes judicial notice that Memorial Day fell on Monday, May 25.

[4]Giminiani herself offers conflicting accounts on the exact date.

8

intention to reconcile with her husband by saying that he knew she was doing so because of her children.  Seymour also points to a telephone conversation between the two, secretly taped by Giminiani, where she attempted, apparently unsuccessfully, to make him admit that he threatened her job.

Giminiani further claims that Seymour yelled at her in the workplace, ordered her to follow him "like the puppy [that she was,]" and told her that it would be stupid to go back with her husband.  Seymour contends that while he told Giminiani that reconciling with her husband would be a bad idea, Giminiani never specifically stated that he threatened her job.  He also claims that he told her she could not treat him like a dog in response to her own insubordinate behavior in front of other employees, and that Giminiani made dog-like gestures behind his back when she followed him.  Giminiani also claims that Seymour called her to his house on a purported work-related matter only to discuss his feelings for her.  Seymour does not deny that he did so, but again asserts that he never threatened her job.

"The question of whether a work environment is sufficiently hostile to violate Title VII is one of fact.... Summary judgment is appropriate only if it can be concluded as a matter of law that no rational juror could view [the

defendant's conduct] as ... an intolerable alteration of [the plaintiff's] working conditions." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001) (internal quotation marks and citations omitted) (alterations in original).  The disputed contentions summarized above preclude summary determination of whether Seymour's conduct created a hostile work environment.  Initially, the parties' accounts of the substance of Seymour's post-affair conduct widely diverge.  It is also unclear whether the alleged conduct occurred during or after the affair, as the parties offer differing accounts of when and how the affair actually ended.  While the record before the court appears to show that Giminiani and Seymour worked together approximately ten days in June (and did not meet at all between June 22 and July 6), the disputed circumstances preclude proper determination of both the severity and frequency of the alleged improper behavior.

Considered in the light most favorable to Giminiani, the record might lead a reasonable finder of fact to conclude that Seymour improperly touched her on numerous occasions following the affair.  Considered together with the alleged touching, Giminiani's remaining allegations might well support a finding that Seymour's comments, alleged threats,

derogatory language, yelling, and attempts to talk about his feelings

created a work environment which a reasonable person might find

objectionable.  At best, the parties' conflicting accounts present questions

of fact, which the court may not resolve at this stage.  Moreover, although

there may well be reason to question the truth of Giminiani's allegations,

the question is one of credibility, a "determination that [the court is] not

entitled to make."  *Stichting Ter Behartiging Van de Belangen Van*

*Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,

407 F.3d 34, 55 (2d Cir.  2005) (citing *R.B. Ventures, Ltd. v. Shane,* 112

F.3d 54, 58 (2d Cir. 1997) ("[E]ven where the surrounding circumstances

indicate what has been termed, perhaps unfortunately, 'implausibility,' at

the summary judgment stage the court should not 'weigh' the evidence in

the same manner as a trier of fact."); *Rule v. Brine, Inc.,* 85 F.3d 1002,

1011 (2d Cir. 1996) ("Assessments of credibility and choices between

conflicting versions of the events are matters for the jury, not for the court

on summary judgment.  Any weighing of the evidence is the prerogative of

the finder of fact, not an exercise for the court on summary judgment."

(internal citations omitted)).

2.   _Imputing Liability to the City_

Second, Giminiani must establish that a specific basis exists for imputing the conduct to the defendant employer.  *See Mack*, 326 F.3d at 122 (citations omitted).  [E]mployers are not automatically liable for sexual harassment perpetrated by their employees."  *Petrosino*, 385 F.3d at 225 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998)).  "Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."  *Id.* (citations omitted); *see Richardson*, 180 F.3d at 441.  Conversely, "[w]here the harassment is attributed to a supervisor with immediate or successively higher authority over the employee, a court looks first to whether the supervisor's behavior culminate[d] in a tangible employment action against the employee ... if it did, the employer will, *ipso facto,* be vicariously liable ...."  *Petrosino*, 385 F.3d at 225 (internal quotation marks and citations omitted) (second alteration and emphasis in original).  "In the absence of such tangible

12

action, an employer will still be liable for a hostile work environment created by its supervisors unless it successfully establishes as an affirmative defense that (a) it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and (b) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Id.* (quoting *Ellerth*, 524 U.S. at 765) (additional citations omitted).

The City defendants first argue that Seymour's behavior cannot be attributed to the City. Here, again, disputed, or insufficiently developed, issues of material facts preclude summary judgment. An employer's vicarious liability rests on the preliminary determination of a misbehaving employee's "supervisory" status. *See Mack*, 326 F.3d at 123. "In the Title VII context, a supervisor is an individual who has the actual or apparent authority to alter the terms, conditions, and privileges of the plaintiff's employment." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1155 n.11 (E.D.N.Y. 2003) (citations omitted). Supervisory status can be generally found where an individual has the authority to take tangible employment action against the subordinate, such as hiring, firing, demoting, failing to promote, transferring, or disciplining her. *See Mack*,

13

326 F.3d at 123-24 (citations omitted).  Alternatively, such status can be found even where the employee does not take tangible employment action, but instead, has authority sufficient to enable or materially augment his ability to create a hostile work environment by, for example, affecting the subordinate's daily activities.  *See id.* at 124-27 (citations omitted).   This latter situation is exactly what Giminiani claims to have occurred.  Giminiani admits that Seymour did not have the authority to take any tangible action against her.  However, she claims that by refusing her cigarette breaks and/or shift assignments, commanding her to follow him into his office to discuss personal matters, and by calling her to his house purportedly to discuss work-related matters but attempting instead to convince her not to reconcile with her husband, Seymour actually affected her daily work activities.  Given the insufficiently developed record (by both sides), and even though a reasonable trier of fact may ultimately find the evidence insufficient, a determination on this issue, and at this juncture, is not the court's to make.

The City defendants further contend, as a defense, that even if Seymour's behavior could be attributed to them, they exercised reasonable care to prevent and promptly correct any sexually harassing behavior.

14

Again, disputed issues of fact preclude summary disposition.  The City defendants submit that when Giminiani complained to Bowen, she was immediately placed on paid leave and an investigation commenced, and she was subsequently allowed to work on a different shift and under a different supervisor.  They further contend that upon completion of the investigation, which revealed no misconduct on Seymour's part, they determined that Giminiani's complaint was unfounded.  Giminiani, however, contends that the investigation was deficient because the City defendants did nothing more than disbelieve her, elected to credit the version by Seymour and other unit employees, and, most importantly, decided to place her back under Seymour's supervision.

Giminiani's contentions, combined with the court's determination at this stage that a reasonable person could find that Seymour subjected her to a hostile work environment, could support a conclusion that the City failed to exercise reasonable care to prevent and/or promptly correct the sexually harassing behavior.  In defense of their decision to put Giminiani back under Seymour's supervision, the City defendants suggested in their reply, and more fully during oral argument, that they had no other alternative because they would risk running afoul of certain seniority-based

shift assignment provisions in their union agreement.  However, because this rationale is both belated and wholly unsupported by the summary judgment record, it will not be considered by the court.

Finally, the court finds unpersuasive at this stage the defendants' rationale based on Giminiani's voluntary relationship with Seymour, as it insufficiently encompasses the events in this case.  The defendants' reliance on *Mauro v. Orville*, 697 N.Y.S.2d 704 (3d Dep't 1999), for the proposition that the termination of an affair is not a basis for a hostile work environment claim, is misplaced.  In *Mauro*, no harassing behavior occurred following the affair.  697 N.Y.S.2d at 706, 708.  Here, like in *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143 (E.D.N.Y. 2003), and *Babcock v. Frank*, 729 F. Supp. 279 (S.D.N.Y. 1990), Seymour's harassing conduct is alleged to have continued after Giminiani terminated their relationship.  In accordance with and based upon the succinct rationale in *Perks*, 251 F. Supp. 2d at 1156-57, the defendants' arguments are rejected.

Based on the above, summary judgment is inappropriate at this time, and the City defendants' and Seymour's motions with respect to Giminiani's Title VII and HRL § 296 hostile work environment claims are

16

**DENIED.**

### B.   Retaliation

Title VII and New York human rights laws prohibit employers from

retaliating against employees who complain about employment

discrimination.  *See*  42 U.S.C. § 2000e(3)(a); N.Y. Exec. Law § 296(1)(e).

"Title VII is violated when a retaliatory motive plays a part in adverse

employment actions toward an employee, whether or not it was the sole

cause."  *Terry v. Ashcroft*,  336 F.3d 128, 140 -41 (2d Cir. 2003) (internal

quotation marks, citation omitted).  Retaliation claims are analyzed

according to the *McDonnell Douglas* burden-shifting analysis.  *Reed v.*

*A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996); *see Tomka,* 66

F.3d at 1308.  First, "to establish a *prima facie* case of retaliation, an

employee must show [1] participation in a protected activity [2] known to

the defendant; [3] an employment action disadvantaging the plaintiff; and

[4] a causal connection between the protected activity and the adverse

employment action [from which retaliatory intent can be inferred]."

*Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (internal quotation

marks, citations omitted).  A plaintiff's burden at this step is *de minimis*.

*See Tomka,* 66 F.3d at 1308.  Once a plaintiff establishes a *prima facie*

case, the employer must then "articulate some legitimate, nondiscriminatory reason for the employer's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  This burden is one of production, not persuasion; it "can involve no credibility assessment." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502,  509, 113 (1993).  The onus then shifts back to the plaintiff to carry the ultimate burden of persuasion and "prove that the proffered reason was merely a pretext for retaliation and that the employer's action was prompted by an impermissible motive." *Tomka,* 66 F.3d at 1308.

In this case, the City defendants' only argument is that Giminiani has not met her *prima facie* burden.  Conceding the first three elements,  they argue that she has failed to established a causal connection between her protected activity and subsequent termination.  In support, they submit that Giminiani's termination was solely based on two factors: her having used all her available sick time, and a disciplinary review of her file showing instances of insubordination towards Bowen and Seymour.  Their reliance on this rationale is misplaced.

"The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely

18

followed in time by the adverse action." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) (citation omitted).  In this case, Giminiani was terminated a little over one month after complaining to Bowen.  This temporal proximity is sufficient to infer a causal connection.  *See Lovejoy-Wilson*, 263 F.3d at 224 (finding inference of causal connection where plaintiff was suspended within a month of complaining to employer); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (same, where plaintiff was terminated twenty days after retaining counsel to pursue discrimination claim); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (same, where plaintiff was discharged less than two months after filing one complaint and ten days after filing another).  Based on the above, Giminiani has met her *de minimis* burden of establishing a *prima facie* case of retaliatory discharge.

     The City defendants do not specifically argue that the stated reasons for Giminiani's termination should be considered as their proffer with respect to the second *McDonnell Douglas* prong.[5]   Even if the court were to consider their explanation as evidence of legitimate, non-discriminatory

---

[5]While they appear to identify the *McDonnell Douglas* three-step burden-shifting analysis by citing to *Coffey v. Dobbs Int'l Servs., Inc.*, 170 F.3d 323 (2d Cir. 1999), the City defendants have failed to present any pertinent substantive argument addressing its elements.

reasons, there would still remain issues of fact for the jury precluding summary judgment.  Giminiani argues and points to evidence showing that, prior to her complaining and subsequent termination, all her performance evaluations had been good, and her use of time off had been proper.  She further submits that, following her outburst before Bowen, she promptly called to apologize, and was arranging with him a return-to-work date just days before her termination.  Based on the above, a reasonable person might conclude that the City defendants' stated reasons, which may well turn out to have been legitimate, were a mere pretext for Giminiani's termination.  Based on the above, summary judgment is inappropriate at this time, and the City defendants' motion with respect to Giminiani's retaliation claims under Title VII and HRL § 296 is **DENIED.**

In turn, Seymour argues that the § 296 retaliation claim against him must be dismissed because he played no role in Giminiani's discharge. While low-ranking employees are usually not subject to individual liability under § 296(1), the HRL's general discrimination provision, "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under [§ 296(6), the statute's aiding and abetting provision]."  *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190,

213  (N.D.N.Y. 2002).  Section 296(6) subjects to personal liability a "co-worker who 'actually participates in the conduct giving rise to a discrimination claim' even where he lacked the authority to either hire or fire the plaintiff."  *Feingold*, 366 F.3d at 158 (quoting *Tomka,* 66 F.3d at 1317).  To impose liability, a plaintiff must also show that the individual aided or abetted 'a primary violation of the [NY]HRL committed by another employee or the [employer] itself ."  *Bennett*, 225 F. Supp. 2d at 213 (internal quotation marks, citations omitted).

Giminiani contends, in conclusory fashion, that Seymour was involved in the decision to terminate her through the "investigation" of the matter.  However, she has neither made any allegation in her complaint, nor has she presented any evidence or cogent argument in her summary judgment papers, which would allow an inference in her favor that Seymour recommended, participated, or otherwise aided and abetted in the decision to terminate her.  Therefore, absent any allegation or issue of fact relative to his involvement in Giminiani's termination, Seymour's motion on the HRL § 296 retaliation claim is **GRANTED.**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the City Defendants' and Seymour's motions for

summary judgment on Giminiani's Title VII and HRL § 296 hostile work environment claims are **DENIED**; it is further

ORDERED that the City Defendants' motion for summary judgment on Giminiani's Title VII and HRL § 296 retaliation claims is **DENIED**; it is further

**ORDERED** that Seymour's motion for summary judgment on Giminiani's HRL § 296 retaliation claim is **GRANTED** and such claim is **DISMISSED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon the parties.

**IT IS SO ORDERED.**

August 24, 2005
Albany, New York

_____
United States District Court Judge